# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN BEHM : | JURY DEMANDED |
| Plaintiff, : | |
| v. : | |
| : | No.   21-2500 |
| MACK TRUCKS, INC., ET AL : | |
| Defendant. : | |

Respectfully submitted by:

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY:   s/Graham F. Baird
GRAHAM F. BAIRD, ESQUIRE
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19110

Attorney for Plaintiff, Colleen Behm

Date: May 9, 2022

**I.      Introduction.**

This case arises out of Plaintiff, Colleen Behm's allegations that Defendant, Mack Trucks, Inc. ("Defendant") failed to accommodate Plaintiff's disability, constructively discharged her after creating a hostile work environment and retaliated against Plaintiff after she needed time off to recover from a concussion she sustained in the workplace, and an unfortunately domestic violence incident involving her husband wherein she sustained an exacerbation of her post-concussion syndrome and post traumatic stress disorder.

Defendant move s or summary judgment arguing that Plaintiff lacks evidence to establish a failure to accommodate, arguing that the Plaintiff never formally requested an accommodation. Plaintiff followed the rules, practices and customs established in that workplace to request an accommodation, i.e. she went through her union to make that request. Furthermore, the Defendant was well aware of Plaintiff's medical condition giving rise to her disability and Defendant knew that Plaintiff was having attendance issues.

Defendant also claims that it never took adverse action against Plaintiff. There are disputed issues of material fact that preclude summary judgment on this issue. Plaintiff testified that after her medical leave, her previous job position was changed, and plaintiff was assigned to the Mack in motion division, a division commonly known for being assigned the "misfits." According to Plaintiff, the "Mack in Motion" position is a place where Mack places the "misfits" within the program. (JA 97:12-15.) Plaintiff stated, "my term and other employees' term is where they put the misfits, and you sit there all day long. And they -- Kaitlyn and another HR representative had me teaching people in cafeteria how to fill out their Buck Week (phonetic) papers and occasionally build a cart in Mack in Motion for supplies, and help with the new

computer systems. So I was pretty much penalized when I went back to Mack, for months on end." (Id.)

Plaintiff also has brought forth evidence creating a dispute of material fact as to the constructive discharge and retaliation claims. Following her workplace injury wherein the Plaintiff suffered a concussion, the Defendant engaged in a pattern of hostile treatment toward the Plaintiff. Defendant harassed Plaintiff immediately following her workplace injury, ordering her to take an ambulance to the hospital after she had worked nearly an entire shift. Defendant then ordered Plaintiff to come into work against her Doctor's orders and kept Plaintiff in the medical department for four hours questioning her about her concussion, ordering her back to work on "light duty" with tinted glasses and some implement to avoid loud noises. Then, after Plaintiff was approved for an extended medical leave, arising out of a domestic violence attack, wherein Plaintiff suffered an exacerbation of her post-concussion syndrome, the Defendant attempted to find any reason it could to terminate her employment, including trying to find a favorable second opinion to order the Plaintiff back to work, hiring a private investigator to follow Plaintiff and surveil her home, and force Plaintiff to return to work without the release form the Plaintiff's treating physician. This created an untenable work environment and establishes animus towards Ms. Behm following her leave.

Finally, Plaintiff was moved to second shift which Defendant knew would cause her extreme difficulty with regards to the care of her children. Plaintiff was notified of this assignment to second shift on Thursday, before she was set to begin working a second shift on the next Monday. In addition, Plaintiff was notified of this shift reassignment after being told for weeks that she was not going to be switched to the second shift, this neglect prevented Plaintiff from finding some child care arrangement, instead springing the shift change on the Plaintiff at

the "11th hour." No employee should be required to work under such conditions and Plaintiff had no choice but to resign.

Summary judgment on the Plaintiff's claims as against Defendant should be denied.

## II. Plaintiff's Statement of Facts.

Plaintiff respectfully relies upon the facts set forth in Opposition to the Defendant's Statement of Facts in support of their Motion for Summary Judgment.

Defendant is not entitled to judgment as a matter of law on Plaintiff's claims, and therefore Defendant's Motion for Summary Judgment should be denied.

## III. Argument.

### A. Standard of Review.

1. Motion for Summary Judgment.

A district court may grant summary judgment only when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under Fed. R. Civ. P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The role of the judge is to determine whether there is a "genuine issue for trial." Id. at 249, 106 S.Ct. 2505.

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The United States Court of Appeals for the Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).

> A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).
>
> When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

> The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted).

Rinaldi v. United States, ___ F.3d ___, 2019 WL 1620340 * 3-4 (April 16, 2019).

Here, Plaintiff has established facts precluding summary judgment on her ADA and PHRA claims. There are disputed issues of material fact as to each of the elements upon which Defendant is seeking summary judgment, specifically, the issues of adverse action, severe and pervasive hostility giving rise to the Plaintiff's constructive discharge and the failure to accommodate issue.

Defendants' Motion for Summary Judgment must be denied.

### B. Defendant is not entitled to judgment as a matter of law on the Plaintiff's failure to accommodate claim under the ADA and the PHRA.

When viewing the evidence in a light most favorable to Plaintiff, the evidence supports a failure to accommodate claim against the Defendant

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show, inter alia, that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir.2004) (internal quotation and citations omitted). "Adverse employment decisions in this context include refusing to make reasonable accommodations for a

plaintiff's disabilities." Id. The term " '[r]easonable accommodation' further 'includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith....' " Id. at 761 (quoting Mengine v. Runyon, 114 F.3d 415, 416 (3d Cir.1997))." Defendant repeatedly failed to communicate with plaintiff in good faith and Defendant's own email communications demonstrates that Defendant did not want to accommodate Plaintiff and displayed animosity throughout the time when plaintiff was on leave. Colwell v. Rite Aid Corp., 602 F.3d 495, 503 (3rd. Cir. 2010).

Defendant knew that Ms. Behm was missing work due to her medications and migraine headaches. (JA 619). Nevertheless, Defendant referred to Plaintiff's medical condition as "illnesses," and was constantly seeking a justification to force Plaintiff back to work or terminate her employment.

Defendant was seeking a reason to terminate the plaintiff that had nothing to do with her medical condition. Defendant's email communications demonstrate a bad faith animus. Defendant wanted to obtain a second opinion from a neurologist only to the extent that it gave Defendant a reason to order Ms. Behm back to work. Gloria Pesola, an HR consultant for Defendant advised Ms. O'Neil that it could take a lengthy period of time to obtain a second opinion and based on the subjective nature of concussions, the second opinion, may not favor Defendant, and instead, Defendant should have a private investigator surveil Ms. Behm to investigate her on a personal level. Ms. O'Neil ordered a private investigator to follow Plaintiff, sit outside her home and try to prove that she was working while on leave from Defendant. [JA 813-814.). (JA 628 through 630). In February, 2021, Defendant's attending physician, Dr. Muto even sent an email to Human Resources, trying to have Ms. Behm fired because he claimed that she had been out of work since September of 2019, (JA 848). It is undisputed that

7

after being threatened with termination, Ms. Behm saw a neurologist upon the request of Defendant who released her to return to work in September 2019, which Plaintiff did, but Defendant was still seeking to terminate the Plaintiff's employment by and through the actions of Ms. O'Neill and Dr. Muto.

Ms. O'Neil also refused to accommodate the Plaintiff's disability despite her knowledge of Plaintiff's neurological issues, arising out of a workplace injury and a domestic violence attack. Despite this knowledge, Ms. O'Neil was constantly critical and skeptical of the Plaintiff's reasons for requesting accommodations. Ms. O'Neil even found Ms. Behm's certification sent by her doctor to be "suspicious;" Ms. O'Neil's suspicions were wholly unfounded. (JA 621) Ms. O'Neil at one point sent email to colleagues casting aspersions on Ms. Behm's character stating "who knows what she'll try to claim injury wise…" (JA 622). Ms. O'Neil and Dr. Muto's conduct precludes summary judgment because there is evidence that Ms. Behm's accommodation requests and disability was treated with hostility by the Defendant.

Defendants' Motion for Summary Judgment should be denied.

### C. Defendant is not entitled to Summary Judgment on Plaintiff's Constructive Discharge Claim.

Plaintiff alleges that the harassment she suffered was so severe as to constitute a constructive discharge.

> We employ an objective test to determine whether an employee can recover on a claim of constructive discharge .... [and must therefore] determine whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir.2001) (internal quotations and citation omitted). Factors we have found relevant to this issue are whether the employer (1) "threatened [the employee] with discharge" or "urge[d] or suggest[ed] that she resign or retire," (2) "demote[d] her," (3) "reduce[d] her pay or benefits," (4) "involuntarily transferred [her]

8

>       to a less desirable position," (5) altered her "job responsibilities,"
>       or (6) gave "unsatisfactory job evaluations." <u>Clowes v. Allegheny
>       Valley Hosp., 991 F.2d 1159, 1161 (3d Cir.1993)</u>.

<u>Colwell v. Rite Aid Corp.</u>, 602 F.3d 495, 503 (3rd. Cir. 2010).

   The facts presented by Plaintiff establish a constructive discharge claim. Plaintiff offered evidence as to all of the factors to be considered on a constructive discharge claim under the ADA. Plaintiff testified that after her medical leave, her previous job position was changed, and plaintiff was assigned to the Mack in motion division, a division commonly known for being assigned the "misfits." According to Plaintiff, the "Mack in Motion" position is a place where Mack places the "misfits" within the program. (JA 97:12-15.) Plaintiff stated, "my term and other employees' term is where they put the misfits, and you sit there all day long. And they -- Kaitlyn and another HR representative had me teaching people in cafeteria how to fill out their Buck Week (phonetic) papers and occasionally build a cart in Mack in Motion for supplies, and help with the new computer systems. So I was pretty much penalized when I went back to Mack, for months on end." (Id.)

 Plaintiff also has brought forth evidence creating a dispute of material fact as to the constructive discharge and retaliation claims. Following her workplace injury wherein the Plaintiff suffered a concussion, the Defendant engaged in a pattern of hostile treatment toward the Plaintiff. Defendant harassed Plaintiff immediately following her workplace injury, ordering her to take an ambulance to the hospital after she had worked nearly an entire shift. Defendant then ordered Plaintiff to come into work against her Doctor's orders and kept Plaintiff in the medical department for four hours questioning her about her concussion, ordering her back to work on "light duty" with tinted glasses and some implement to avoid loud noises. Then, after Plaintiff was approved for an extended medical leave, arising out of a domestic violence attack,

9

wherein Plaintiff suffered an exacerbation of her post-concussion syndrome, the Defendant attempted to find any reason it could to terminate her employment, including trying to find a favorable second opinion to order the Plaintiff back to work, hiring a private investigator to follow Plaintiff and surveil her home, and force Plaintiff to return to work without the release form the Plaintiff's treating physician.  This created an untenable work environment and establishes animus towards Ms. Behm following her leave.

### IV.     Conclusion.

In light of the foregoing, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY:   s/Graham F. Baird
 **GRAHAM F. BAIRD, ESQUIRE**
 Two Penn Center
 1500 JFK Boulevard,  Suite 1240
 Philadelphia, PA 19110

Attorney for Plaintiff, Colleen Behm

Date: May 9, 2022